**In re H.E. GRAF, INC., a California corporation, Debtor.**

**Bankruptcy No. 283–00429–A–7.**

United States Bankruptcy Court, E.D. California.

April 10, 1991.

---

Richard D. Steffan, Auburn, Cal., Trustee.

Thomas M. Glasheen, Jr., Young, Woodridge, Paulden, Self, Farr & Griffin, Sacramento, Cal., for Bank of America, NT & SA.

John D. Bessey, Hefner, Stark & Marois, Sacramento, Cal., for Woodland Production Credit Ass'n.

### MEMORANDUM OPINION AND ORDER

LOREN S. DAHL, Chief Judge.

The Chapter 7 Trustee, RICHARD D. STEFFAN, filed his Amended First and Final Account, Report and Application for Allowances on January 30, 1991, which comes before the court for its disposition.

This case was filed under Chapter 11 on February 2, 1983; it was converted to Chapter 7 on October 28, 1985. RICHARD D. STEFFAN was appointed trustee November 22, 1985. At the request of the trustee, ROBERT GEIGER of GEIGER AUCTION SALES was appointed appraiser "to appraise ... all items of real and personal property belonging to the estate of said Debtor, and to prepare and file with the Court a report of said appraisal." Whether he appraised property of the estate is unknown to the court for there is no appraisal report on file. The trustee's account does not reflect payment of an appraisal fee of $300.00 as fixed in the appointment order nor does the trustee seek authorization to make such a payment at this time. From these facts, the court infers that an appraisal was not done.

The next document in the file is captioned, Notice of Auction Sale, signed by the trustee, stating that assets of the estate, to wit: Caterpillar 623B—Caterpillar D8K—(3) Service Trucks—Misc. Laser Equipment—Radio Equipment—Misc. Parts, shall be auctioned on May 9, 1986, at 11303 Folsom Boulevard, Rancho Cordova, CA. 95670 (the address of GEIGER AUCTION SALES, INC.). Apparently an auction sale was held, for attached to the trustee's amended account is a letter to the trustee dated September 22, 1986, from GEIGER AUCTION SALES, INC., by ROBERT H. GEIGER, enclosing a check for $182,110.28. MR. GEIGER states that the check represents $161,819.78 for "property liened by Production Credit Assn." (PCA) and $20,290.50 for pink-slipped vehicles which were clear. Details of the auction sale such as the amount of gross sales, commission and expenses deducted, specifics of the items sold, etc., are not attached to the trustee's account nor are they in the case file. However, the court is aware that MR. GEIGER'S practice was to deduct commissions and expenses from the gross sales before disbursing the net sales

proceeds and it is fair to infer that such a practice likewise occurred herein even though neither he nor his firm was ever court approved to act as auctioneer nor were his commissions and expenses ever submitted to the court for approval.

Exhibits to the trustee's original account filed November 29, 1988, show that the trustee received from Bank of America $20,008.23, which was deposited on February 25, 1986, and disbursed $161,819.78 to Woodland Production Association (PCA) on November 3, 1986, leaving a balance of $40,299.73 which he transferred to savings in July 1988. The amended account reflects a balance of $44,795.24, the difference being interest earned.

The trustee seeks $4,512.30 by way of compensation which is the statutory maximum under 11 U.S.C. § 326 on $206,615.02 which he asserts he disbursed to parties in interest excluding the debtor. He also seeks reimbursement of expenses in the sum of $1,348.18.

■ The court takes judicial notice of the amended secured claim of Woodland Production Credit Association (PCA) filed October 25, 1984, in the sum of $236,993.04, to which no objection has been made. Why the trustee did not abandon any claim to PCA's collateral prior to the sale by GEIGER is unknown to the court. In view of the large difference in the net sales proceeds of the PCA collateral and the amended claim, it seems clear that a sale of those items would not afford any benefit to the estate. Why was the appraisal not filed? Was it never done as the failure to pay the appraisal fee suggests? It is preposterous for the trustee to seek compensation on the net proceeds of PCA's collateral in which the trustee merely acted as a conduit. Moreover, this court has repeatedly advised Chapter 7 trustees that the percentages set forth in 11 U.S.C. § 326(a) do not determine a trustee's compensation but simply establish a limit or cap on the amount allowable. Chapter 7 trustees are entitled to reasonable compensation as provided by Sections 326(a) and 330 and must comply with Bankruptcy Rule 2016. Here, the trustee has provided the court with no details of services rendered, time expended and the necessity therefor; hence the court will determine the reasonable allowable compensation from a review of the case file, including the original and amended accounting by the trustee. The $161,819.78 paid over to PCA will be excluded in fixing the trustee's compensation; the court concludes that the trustee abandoned *de facto* the PCA collateral, thus it never really became a part of the estate. That leaves about $45,000.00 (the § 326 maximum being $1,280.00) in the trustee's account of which the trustee received $20,008.23 from Bank of America without any apparent time expenditure. He received $20,290.50 from GEIGER, the unappointed auctioneer, without any apparent time expenditure, and $4,496.51 in interest on his savings account with no time expenditure. After filing his First and Final Account on November 29, 1988 (three years after his appointment), the trustee on August 17, 1990, filed objections to claims # 19 for $133,719.27 and # 20 for $27,-300.00 as a priority. By October 1990, the objection to # 19 had been sustained by default and # 20 reduced by stipulation to $3,600.00 priority and $23,700.00 unsecured. Then, on January 30, 1991, (five years and two months after his appointment) the trustee filed his Amended First and Final Account and Application for Allowances with which we here deal.

The facts here chronicled point to a horrible case of trustee ineptness and procrastination. By October 23, 1986, all funds had been received by the trustee and should have been earning interest thereafter. They did not until July 1988, thus losing 20 months of 4% interest on $40,000, amounting to $2,560. Actually, the claims objections could have been made and resolved and the Trustee's First and Final Account filed by July 1987, looking to distribution and case closing during 1987. Had this been done, the trustee's bond premiums of $589.79 for 1988–91 would not have been incurred. Furthermore, had the trustee instructed the auctioneer to send the $161,819.78 directly to PCA rather than running it through his account, the first year's bond premium would have been no more than $141.05 rather than $707.41, a difference of $566.36 to the estates's detriment.

For services rendered as trustee, the court considers $800.00 to be reasonable. Expenses being sought, namely, $1,348.18, must be reduced by the unnecessary bond premium for 1986 in the sum of $566.36 and the bond premium proration for the years 1988–91, which but for the procrastination and unjustifiable delay by the trustee, would not have been incurred. This leaves $192.03 for expenses which with allowed trustee's compensation totals $992.03, which will be offset by the interest loss of $2,560.00. Consequently, no compensation nor reimbursement of expenses will be paid to the trustee nor will he be surcharged for the balance of the interest loss providing he completes the administration of this estate with due diligence.

The court reserves jurisdiction to modify this order of allowance and/or to impose sanctions including further surcharges, if considered necessary, should any further unnecessary delay in the further administration of this case occur.

IT IS SO ORDERED.