In re PATRIOT ILLINOIS COR-
PORATION, an Illinois Cor-
poration, Debtor.

FLEET BANK OF MASSACHUSETTS,
N.A., Plaintiff,

v.

TIERNEY, KALIS & LUCAS, Defendant.

Bankruptcy No. 92–81749.
Adv. No. 94–8043.

United States Bankruptcy Court,
C.D. Illinois.

Nov. 8, 1994.

Andrew W. Covey, Peoria, IL, for plaintiff.

Timothy L. Bertschy, Heyl, Royster,
Voelker & Allen, Peoria, IL, for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Chief
Judge.

Before the Court is the motion for sum-
mary judgment filed by TIERNEY, KALIS

& LUCAS (LAW FIRM), the Defendant in an adversary proceeding brought by FLEET BANK OF MASSACHUSETTS, N.A. (FLEET BANK), as assignee of the Debtor, PATRIOT ILLINOIS CORPORATION (PATRIOT), to recover a fraudulent conveyance.

PATRIOT owned and operated a 320 unit apartment complex known as "The Woods at Candletree." After institution of a foreclosure proceeding by Federal Home Loan Mortgage Corporation, holder of the first mortgage, in the summer of 1992, PATRIOT filed this Chapter 11 proceeding. PATRIOT entered into a stipulation with the first mortgagor allowing it a short opportunity to find a purchaser for the complex. Unable to propose a plan of reorganization, PATRIOT filed a liquidating plan. Under the proposed plan, if the complex was not sold through the bankruptcy proceedings, it would be sold through the foreclosure proceeding instituted by the first mortgage holder. Under the terms of the plan, PATRIOT proposed to pay the first mortgage holder in full from the proceeds of sale, along with administrative claimants. Pre-petition unsecured priority security depositors would be paid in full from either an assumption of their full balances by the purchaser or by giving the purchaser a credit against the purchase price at closing. Any remaining proceeds would be distributed to FLEET BANK (formerly Heritage Bank for Savings), holder of a second mortgage and owed almost $2,000,000.00. It was anticipated that Bank Hapoalim of Boston, MA, holder of a third mortgage, would not receive any payment on its claim.

On December 10, 1992, PATRIOT filed a motion to sell the complex to Michael B. McDonald, who agreed to pay the holder of the first mortgage approximately $8,780,-000.00 and to assume the prepetition security deposits of PATRIOT's tenants totalling approximately $75,811.78, and to pay an additional $125,000.00 to PATRIOT at the closing. FLEET BANK objected to the sale, questioning the fair market value of the complex. The parties reached an agreement and an order was entered approving the sale on January 12, 1993. After some delay, the sale was concluded and PATRIOT filed a report of sale, showing no funds generated from the sale to be paid over to FLEET BANK. PATRIOT and FLEET BANK entered into a stipulation which provided that FLEET BANK would receive the sum of $10,000.00, any amounts remaining from the fund allotted for administrative claims and a portion of the net rents collected for the month that the sale occurred. In addition, the stipulation provided for the assignment of certain claims to FLEET BANK:

Within 30 days after confirmation, the Debtor shall assign to Fleet Bank of Massachusetts: (1) any and all claims of the Debtor and/or this bankruptcy estate for said remaining unpaid rents and (2) any and all claims arising under Bankruptcy Code Sections 544, 547, 548, and Section 550, as now existing or hereafter amended, against Patriot Real Estate Development Corporation, its successors, assigns and any entity (individual, corporate or otherwise) with which said corporation is in any way affiliated, and all of said Corporation's transferees and all subsequent transferees, including, but not limited to, all individual transferees and subsequent transferees. The Debtor and nhs Management shall retain all records pertaining to the above claims until the statute of limitations with respect to said claims has expired. This Bankruptcy Court shall retain jurisdiction after confirmation of this Plan to adjudicate all said claims.

Any recovery on said claims shall be paid to Fleet Bank, up to the amount of Fleet Bank's allowed claim. Any recovery in excess of Fleet Bank's allowed claim will be paid by Fleet Bank to the other Class V creditor (ie. Bank Hapoalim of Boston, M.A.) in accordance with the Debtor's plan for distribution to other creditors in accordance with the Debtor's Plan filed herein November 13, 1992. Nothing herein shall impose any obligation on Fleet Bank to pursue the said claims.

All other terms of the Liquidating Plan of Reorganization filed November 13, 1992 shall remain the same. This Stipulation is incorporated into the said Plan. And order approving this Stipulation shall be deemed incorporated in any order approving said Plan or any other Plan filed by the Debtor.

The Court approved the sale and disclosure statement, and the plan was confirmed on September 23, 1993. PATRIOT filed a report of disbursements and a request for a final decree on October 8, 1993, showing a distribution of the remaining funds on hand of $5,164.73 to FLEET BANK. FLEET BANK objected to the issuance of a final decree, claiming that the case should remain open in order to allow it to pursue avoidable transfers and to collect unpaid rents and a stipulation so providing was entered into between PATRIOT and FLEET BANK and was approved by this Court.

FLEET BANK brought this adversary proceeding against the LAW FIRM to recover $30,000.00 paid by PATRIOT to the LAW FIRM on February 6, 1992, prior to PATRIOT's bankruptcy filing. Count I is brought under § 548(a)(1) of the Bankruptcy Code, 11 U.S.C. § 548(a)(1), alleging a fraudulent conveyance, in that the payment was made with actual intent to hinder, delay or defraud an entity to which PATRIOT was or became, on or after the date the payment was made, indebted. Count II is brought under § 548(a)(2) of the Bankruptcy Code, 11 U.S.C. § 548(a)(2), also alleging a fraudulent conveyance, in that PATRIOT received less than a reasonably equivalent value in exchange for the payment. Counts III through V are brought under § 544 of the Bankruptcy Code, 11 U.S.C. § 544, and the Uniform Fraudulent Transfer Act as adopted in Illinois, specifically 740 ILCS 160/5(a)(1), 160/5(a)(2), and 160/6(a), alleging respectively under Count III a fraudulent conveyance in that PATRIOT did not receive a reasonably equivalent value while PATRIOT was insolvent or the payment caused PATRIOT to become insolvent.

The LAW FIRM filed an answer denying the allegations of the complaint and by the answer and affirmative defenses denied this Court had jurisdiction. After a pretrial conference the LAW FIRM filed a motion for summary judgment contending this Court has neither subject matter nor personal jurisdiction. The LAW FIRM argues that the post-confirmation jurisdiction of the bankruptcy court is limited to implementing and executing the confirmed plan and that the terms of a confirmation order cannot create jurisdiction where it would otherwise not exist.

The LAW FIRM relies on *In re Cary Metal Products, Inc.*, 152 B.R. 927 (Bkrtcy. N.D.Ill.1993), a case involving the post-confirmation jurisdiction of the bankruptcy court to enjoin a products liability suit against the purchaser of the debtor's assets where the sale agreement provided the bankruptcy court retained jurisdiction to enjoin any such claims. The court focused upon § 1142(b), which governs implementation of a Chapter 11 plan, and provides:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). Finding that the proceeding would neither impact a creditor's interest or involve an asset of the bankruptcy estate, the court held that it lacked jurisdiction:

> This Court is without power to give [the purchaser] what it desires because the plan has been completed and no assets remain. There is nothing left to be impacted, there is nothing left to be allocated and there is nothing left to be done. This Court has monitored the full consummation of the plan of reorganization, and to expand its authority to do otherwise because the plan of reorganization so authorizes would eviscerate the limited jurisdiction Congress intended bankruptcy courts to exercise post-confirmation.

This Court finds *Cary Metal* to be distinguishable from the present case based upon the nature of the claims at issue. FLEET BANK relies on *In re Churchfield Management & Inv. Corp.*, 122 B.R. 76 (Bkrtcy. N.D.Ill.1990), a case involving post-confirmation pursuit of preferences and fraudulent conveyances. Under the terms of a settlement agreement, the chapter 11 trustee agreed to transfer to a third party the right to avoid and recover preferential transfers as

well as to prosecute and collect upon claims for fraudulent conveyances in exchange for a substantial sum of money paid by the third party to be distributed to bankruptcy creditors and administrative expense claimants. The court easily found that it had jurisdiction of the preference and fraudulent conveyance actions and noted that courts have consistently held that post-confirmation jurisdiction over such claims continues where the plan provides for jurisdiction to be retained. The court then turned to the more troublesome issue of the third party's standing to bring the claims, governed by § 1123(b)(3)(B) of the Bankruptcy Code, which provides that a plan may:

(3) provide for ...

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of [any claim or interest belonging to the debtor or to the estate].

11 U.S.C. § 1123(b)(3)(B). The court found that the third party satisfied both the requirement that it was appointed and that it was a representative of the estate. In determining that the second element was satisfied, the court held that the benefit envisioned by § 1123(b)(3)(B) encompassed past benefits to the estate which might have occurred prior to the actual recovery on a claim pursued under that provision. The court emphasized that it would be unfair to bar the third party from pursuing the avoidance actions because it had bargained for those rights in the confirmation process.

■ In the present case, the alternative to a sale of the complex through a liquidating plan was a sale through the foreclosure proceeding, which likely would have resulted in no benefit to the unsecured creditors, tenants of the complex who would have lost their security deposits. Other than undersecured creditors, there were no other unsecured creditors who were not insiders. While it is true that this Court cannot say that FLEET BANK had a valid objection to the sale of the complex, the agreement it reached with PATRIOT through which it received the right to pursue avoidance actions, permitted the sale to go forward and the claims of the unsecured creditors to be satisfied in full through the liquidating plan. Under *Churchfield Management, supra,* and the cases discussed therein, this Court finds that the bankruptcy estate has benefited under § 1123(b)(3)(B).

■ The LAW FIRM, in response to an inquiry made by the Court at the pretrial hearing, suggests that jurisdiction properly lies in a federal district court under 28 U.S.C. § 1331, the general statute conferring jurisdiction upon federal courts in cases involving a "federal question." In this Court's view, jurisdiction lies, if at all, in this Court. Avoidance actions are core proceedings, and the broad statutory parameters of federal bankruptcy jurisdiction are not affected by confirmation. *Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228, 232 (4th Cir. 1987); *In re TGX Corp.,* 168 B.R. 122 (W.D.La.1994). This Court finds that it has subject matter jurisdiction over the adversary proceeding and that FLEET BANK has standing to pursue the complaint.

■ The LAW FIRM also contends that this Court lacks personal jurisdiction, claiming that it had insufficient contacts with this bankruptcy case. The Bankruptcy Rules, however, provide for nationwide service of process in adversary proceedings. Bankruptcy Rule of Procedure 7004(d); *Diamond Mortg. Corp. v. Sugar,* 913 F.2d 1233 (7th Cir.1990). In light of this Court's earlier determination that this is a core proceeding, the LAW FIRM's contention is entirely without merit.

For the foregoing reasons, the motion for summary judgment filed by the LAW FIRM must be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.