933 F.2d 215
 60 USLW 2014, 24 Collier Bankr.Cas.2d 1853,
21 Bankr.Ct.Dec. 1149, Bankr. L. Rep. P 73,970
 John G. WELLMAN, Sr., as Debtor-in-possession, Plaintiff-Appellant,
v.
Arthur O. WELLMAN, Jr.; Edward R. Sacks; and Wellman,
Incorporated, Successor to Sacks Textile
Associates, Incorporated, Defendants-Appellees.
 No. 90-1403.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 2, 1990.
Decided May 13, 1991.
 
 Robert Wayne Byrd, Ronald Eugene Boston, argued (Michael S. Church, on brief), Turner, Padget, Graham & Laney, P.A., Florence, S.C., for plaintiff-appellant.
 James C. Parham, Jr., argued (Marshall Winn, on brief), Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., for defendant-appellee Arthur Wellman.
 Morris Milton Schnitzer, Roseland, N.J., argued (John P. Linton, Marvin D. Infinger, Sinkler & Boyd, P.A., Charleston, S.C., on brief), for defendant-appellee Sacks.
 Morris D. Rosen, Alice F. Paylor, Rosen, Rosen & Hagood, Charleston, S.C., for defendants-appellees Wellman, Inc. and Sacks Textile Associates.
 Before SPROUSE and WILKINSON, Circuit Judges, and NICKERSON, United States District Judge for the District of Maryland, sitting by designation.
 SPROUSE, Circuit Judge:
 
 
 1
 John Wellman, in his action below, sued Arthur O. Wellman, Edward R. Sacks, and Wellman, Inc., successor to Sacks Industries, Inc. (previously named Sacks Textiles Associates, Inc.), for damages and to set aside a conveyance of stock to Edward Sacks made prior to John Wellman's bankruptcy, under the provisions of Secs. 548 and 550 of United States Bankruptcy Code, 11 U.S.C. Secs. 548, 550. The district court granted summary judgment to the defendants and John Wellman appeals. We affirm.
 
 I.
 
 2
 In 1983, Wellman, Inc. was a Massachusetts corporation which manufactured and sold recycled synthetic fibers, with its principal manufacturing facility in Johnsonville, South Carolina. It was owned by two brothers, John and Arthur Wellman, and their immediate families. The plaintiff, John Wellman, was Chairman of the Board of Directors and Chief Executive Officer of the company. His brother, Arthur Wellman, was President of the company. The only other member of the Board of Directors was company Treasurer Maximilian Alter. The details of Wellman, Inc.'s capitalization do not bear heavily on the resolution of this appeal. Suffice it to recognize that the two brothers each owned or controlled fifty percent of the voting stock and they or their families owned approximately equal shares of the nonvoting stock.[1] The voting stock had been placed in a voting trust with the two brothers as sole trustees. All actions concerning the stock required a unanimous vote of the trustees, with disputes to be resolved by arbitration. Under the Articles of Organization of Wellman, Inc., the shares of stock could not be sold without having first been offered to the corporation. The corporation was apparently successful.
 
 
 3
 In 1982, the Wellman brothers attempted to sell Wellman, Inc. to Allied Corporation, a company engaged in similar business. The sale, however, failed to materialize. In 1983, John Wellman advised his brother, Arthur, that he still wished to sell his stock, and the latter contacted Edward Sacks, President and principal owner of Sacks Textiles Associates, Inc., concerning a possible purchase of his brother's stock. Sacks eventually purchased John's interest, and he and Arthur Wellman continued to operate Wellman, Inc. for about two years before selling it in a leveraged buyout, which realized a profit far greater than that paid to John Wellman for his stock.
 
 
 4
 Not directly related to the Wellman brothers' operation of their synthetic fibers business was John Wellman's involvement in another venture--the Lakewood Plantation Company, Inc., a pork processing enterprise. In 1981, John Wellman and one of his sons founded the corporation which suffered a disastrous financial end. John invested several million dollars in Lakewood. Relying on the anticipated 1981 sale of Wellman, Inc. to Allied, he guaranteed $6,000,000 in loans made to Lakewood. He eventually sold his shares to his accountant for $1,466 (apparently in order to realize the loss for tax purposes). In 1984 John Wellman filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 1101, et seq. His schedules revealed assets of $13,353,845.34 and liabilities of $8,420,161.96, for a net worth of $4,933,683.38. His bankruptcy plan evinced an intention that all creditors be paid and eventually they were. In the spring of 1986, after the action sub judice was filed, John Wellman paid all allowed administrative expenses and all unsecured creditors 100 percent of their claims, with interest. The three secured creditors (The Citizens & Southern National Bank, Budd Leasing Corporation, and Travelers Insurance Company), with claims in the aggregate amount of $8,234,284, received the collateral Wellman had assigned to secure the loans and payment of $5,187,024.50 in cash (including interest in the approximate amount of $864,639, and attorneys' fees of $200,000).
 
 
 5
 John Wellman also gave these three creditors non-recourse notes in the total amount of $600,000, which, according to their terms, were to be paid only out of a net recovery or settlement of the lawsuit we now review and another.[2] The notes provided that John Wellman, individually, had an "absolute right to direct and control" the lawsuit. This included the right to pursue or abandon it as he chose. As the district court characterized it,
 
 
 6
 [i]f there is no net recovery, or if he chooses to abandon the lawsuits (as he has already done with one of them) he owes his creditors nothing more. Only if he chooses to pursue the lawsuit(s) and obtains a net recovery, or if he receives a settlement offer acceptable to his creditors which he rejects, does he owe these creditors anything.
 
 
 7
 In January 1986, John Wellman, as debtor-in-possession of his bankruptcy estate, brought this action. His amended complaint asserted four causes of action. Wellman's first cause of action sought to set aside his pre-bankruptcy sale of his stock under Sec. 548 of the Bankruptcy Code, 11 U.S.C. Sec. 548. The other causes of action alleged a breach of fiduciary duty, common law conspiracy, and violation of securities laws--a claim later abandoned. The district court held, in granting the defendant's motion for summary judgment as to all three remaining causes of action, that John Wellman lacked standing to pursue an action under Sec. 548 because it was pursued in his own behalf rather than for the benefit of the estate, that no fiduciary duty existed between the two Wellman brothers, and that there was no evidence of conspiracy. On appeal, John Wellman contends that the district court erred in each of its principal rulings.
 
 II.
 
 8
 The district court ruled that John Wellman had no standing to maintain the Sec. 548 action because it was not for the benefit of his bankruptcy estate. Section 548 of the Bankruptcy Code provides, in pertinent part:
 
 Fraudulent transfers and obligations
 
 9
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
 
 
 10
 . . . . .
 
 
 11
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 
 
 12
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
 
 
 13
 (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
 
 
 14
 (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
 
 
 15
 11 U.S.C. Sec. 548.
 
 
 16
 Section 550 of the Bankruptcy Code provides, in pertinent part:
 
 
 17
 Liability of transferee of avoided transfer
 
 
 18
 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property....
 
 
 19
 11 U.S.C. Sec. 550(a).
 
 
 20
 Wellman contends that he received less than a reasonably equivalent value from Sacks in exchange for his stock, and that he comes within the requirements of Sec. 548(a)(2)(B)(i), (ii), and (iii). He urges, therefore, that he is entitled to regain his stock or its equivalent value. Successful prosecution of the suit, according to his view, will result in payment of $600,000 plus interest to the three former secured creditors who hold his conditional notes, and his retention of the balance of the recovery. The defendants, of course, agree with the district court that Wellman lacks standing because a recovery would not benefit the bankruptcy estate--a necessary predicate to a Sec. 548 action to avoid and recover transferred property.
 
 
 21
 We, likewise, agree with the district court that Secs. 548 and 550 provide for avoidances of transfers and allow recovery of the transferred property or its value only if the recovery is for the benefit of the estate. In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the United States Supreme Court, although considering the different issue of a Seventh Amendment right to a jury trial, noted that Secs. 548 and 550, rather than creating new causes of action, represented a continuum of the common law principles supporting actions to set aside fraudulent conveyances. Justice Brennan, writing for the majority, stated:
 
 
 22
 There can be little doubt that fraudulent conveyance actions by bankruptcy trustees--suits which, we said in Schoenthal v. Irving Trust Co., 287 U.S. , at 94-95, 58 S.Ct. at 51 [77 L.Ed. 185 (1932) ] (citation omitted), "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it"--are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.
 
 
 23
 . . . . .
 
 
 24
 ... Congress simply reclassified a pre-existing common-law cause of action that was not integrally related to the reformation of debtor-creditor relations....
 
 
 25
 Id. 109 S.Ct. at 2798-2800.
 
 
 26
 We have not faced this Sec. 548/550 standing issue before, nor has it received great attention from other appellate courts. Courts considering the issue, however, have, with unanimity, concluded that a trustee or a debtor-in-possession of a bankruptcy estate cannot maintain an avoidance action under Sec. 548 unless the estate would be benefitted by the recovery of the transferred property. In Whiteford Plastics Co. v. Chase Nat'l Bank, 179 F.2d 582 (2d Cir.1950), the Second Circuit Court of Appeals refused to recognize the power of the Chapter 11 debtor to void a defective recorded lien under Sec. 70(c) of the former Bankruptcy Act, 11 U.S.C. Sec. 110(c), because voiding the lien would benefit only the debtor, not the unsecured creditors who had previously accepted the arrangement and could receive no more than the ten percent of their claims which had been provided. To this same general effect is In re Vintero Corp., 735 F.2d 740, 742 (2d Cir.1984); In re Schwab, 613 F.2d 1279, 1281 n. 2 (5th Cir.1980); and City Nat'l Bank & Trust Co. v. Oliver, 230 F.2d 686, 690 (10th Cir.1956).
 
 
 27
 In our view, this conclusion in this case is mandated by the language of Sec. 550(a) that "the trustee may recover, for the benefit of the estate, the property transferred." (Emphasis added.) In support of this principle, Collier on Bankruptcy states:
 
 
 28
 The preamble to section 550(a) limits the trustee by permitting recovery only for the benefit of the estate. Thus, in general, the trustee or debtor in possession may not recover the property transferred or its value when the result is to benefit only the debtor rather than the estate.
 
 
 29
 4 Collier on Bankruptcy, p 550.02 n. 3 (15th ed. 1979).
 
 
 30
 John Wellman, nevertheless, insists that the estate would be benefitted if he were to succeed in regaining his stock or its value. Our final task in this context then is the review of the district court's determination that Wellman's Sec. 548 action was not for the benefit of the estate. We agree with the bankruptcy courts that have generally recognized that the answer to that question depends on a case-by-case, fact-specific analysis. See In re Tennessee Wheel & Rubber Co., 64 B.R. 721, 725 (Bankr.M.D.Tenn.1986) (noting that the " 'benefit' to unsecured claimholders necessary to support a debtor's post-confirmation recovery powers has taken many forms in the reported decisions"), aff'd, 75 B.R. 1 (1987); In re Southern Indus. Banking Corp., 59 B.R. 638 (Bankr.E.D.Tenn.1986); In re Join-In Int'l (USA) Ltd., 56 B.R. 555 (Bankr.S.D.N.Y.1986); City Nat'l Bank & Trust Co. v. Oliver, 230 F.2d 686, 690 (10th Cir.1956). That analysis persuades us to the view expressed by the district court.
 
 
 31
 John Wellman's indebtedness to Budd Leasing was $1,283,571.63. To Citizens & Southern National Bank it was $5,136,115.40. Wellman made a cash payment to Budd Leasing in the amount of $715,507.18 and was given credit for paid interest in the amount of $115,521.45 for a total of $831,028.63. Citizens & Southern National Bank was paid $4,000,392.40 as a cash payment and allowed credit for interest paid in the sum of $452,905.00 for a total of $4,453,297.40. Travelers received a comparable settlement of its claim, including, like the others, the retention of collateral. The amended plan included nonrecourse notes to Citizens & Southern in the amount of $425,450, to Budd Leasing for $74,550, and to Travelers for $100,000.[3] Evidence, however, that these creditors would have accepted the plan without the nonrecourse notes are the conditions contained in the notes which precluded recovery on them in the event Wellman failed to prosecute the action or was unsuccessful in prosecuting it. More significant perhaps was the surplus remaining in the estate after payment of all creditors. John Wellman, with the court's approval, distributed to himself surplus cash and property valued at $2,524,769, several times the sum necessary to meet the short fall purportedly represented by the conditional notes.
 
 
 32
 The district court found that John Wellman executed the non-recourse promissory notes to the creditors in an attempt to create a claim in the estate so that he could obtain a "massive surplus recovery" for himself in addition to the surplus distributed to him. The court emphasized that the action of Wellman as debtor-in-possession could be maintained or dropped at his absolute discretion; the suit was not required by the secured creditors; and that under the settlement agreement, the secured creditors received cash and collateral sufficient to satisfy them. We agree.
 
 III.
 
 33
 We are likewise convinced that there is no merit to John Wellman's contention that his brother breached a fiduciary duty to him, and that the defendants were liable to him under a conspiracy theory. We affirm that portion of the summary judgment based on the district court's opinion.
 
 
 34
 The judgment of the district court is affirmed.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 Arthur held 22,440 shares of Common A voting stock, with another 1,250 held in trust for his family. John held 21,838 such shares, with another 1,852 held in trust for his family. While Arthur held 197,443 and John 201,065 shares of Common B non-voting stock, their families held in trust 11,250 and 16,668 shares, respectively
 Finally, Arthur held 21,567 shares of second preferred stock, with another 21,170 held in trust or owned by his family. John held 14,116 shares of second preferred stock, with another 26,160 owned or held in trust by his family.
 
 
 [2]
 John Wellman had previously filed suit to set aside the sale of his shares in Wellman International Ltd., an Irish corporation partially owned by Wellman, Inc. In October 1988, he consented to a voluntary nonsuit, with prejudice
 
 
 [3]
 The three non-recourse notes, if paid, would result in 100 percent payment of these claims