In re James A. BOXALL, Jr., Debtor.

James A. BOXALL, Jr., Plaintiff,

v.

Lilia KREB, a/k/a Lilia El Ouaer, Defendant.

Civ. A. No. 95–1125–A.
No. 95–13061–AM.
Adv. No. 95–1228.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 31, 1995.

Sally Ann Hostetler, Odin, Feldman & Pittleman, P.C., Fairfax, VA, Richard J. Stahl, Dixon, Smith & Stahl, Fairfax, VA, for James A. Boxall, Jr.

John P. Van Beek, Alexandria, VA, Pleasant S. Brodnax, III, Bullock & Broadnax, Alexandria, VA, for Lilia Kreb a/k/a Lilia El Ouaer.

### MEMORANDUM OPINION

ELLIS, District Judge.

This bankruptcy appeal presents two questions. The threshold issue is whether the order appealed from is final under 28 U.S.C. § 158(a). The merits issue is whether the bankruptcy court was premature in determining the portion of a fraudulent conveyance that would benefit the estate where, as here, the determination was made prior to the deadline for the filing of claims against the estate.

## I

James Boxall, a married man and the debtor and plaintiff in this adversary proceeding, met the defendant, Lilia Kreb, also known as Lilia El Ouaer, in January 1995. Soon thereafter, the two developed and carried on a

romantic relationship. On March 2, Ms. Kreb persuaded Mr. Boxall to sign a handwritten agreement in which he promised that if he did not divorce his wife, he would transfer to Ms. Kreb title to a portion of his estate and title to his interest in the home he owned jointly with his wife. When Ms. Kreb's and Mr. Boxall's clandestine relationship began to sour in early July, she began to pressure Mr. Boxall to comply with the agreement, threatening him with public disclosure of the relationship and public humiliation. Acceding to her demand, he gave her two cashier's checks, one for $170,000 drawn on NationsBank of D.C. and the other for $120,000 drawn on NationsBank of Virginia. Mr. Boxall admits that at least $132,500 of that money actually belonged to his wife. Ms. Kreb deposited the two checks on July 13 in a bank account in Tunis, Tunisia, her home country and the place to which she intended to return shortly after receiving the checks.

While the two checks were in the process of being transmitted to NationsBank from Tunisia for payment, Mr. Boxall filed a voluntary Chapter 11 petition for bankruptcy. *See* 11 U.S.C. §§ 1101 *et seq.* Simultaneously with the bankruptcy petition, he filed an adversary proceeding against Ms. Kreb to recover the $290,000, claiming that it was either a fraudulent conveyance under 11 U.S.C. § 548, or a preference under 11 U.S.C. § 547.[1] His wife, who had, shortly before, filed for divorce, promptly sought to intervene in the adversary action.[2] She argued before the bankruptcy court that all of the $290,000 her husband had paid to his paramour belonged to her, and that her husband owed her roughly $500,000 in addition to the alimony, support, and equitable distribution amounts to be determined by the divorce court.

At Mr. Boxall's request, the bankruptcy court held an expedited hearing on July 14 and entered a temporary restraining order prohibiting NationsBank from paying the two checks. At the subsequent preliminary injunction hearing, the bankruptcy court granted NationsBank's motion for interpleader and allowed the bank to pay the $290,000 into the bankruptcy court's registry. Beyond this, the bankruptcy court heard testimony as to the source of the funds for the checks, and the status and magnitude of Mr. Boxall's debts and assets. On the basis of this evidence, the bankruptcy court decided that Mr. Boxall was unlikely to prevail at trial on his claim of a preference under § 547, but likely to prevail on his claim that the transfer of $290,000 constituted a fraudulent conveyance. The bankruptcy court also found that the harm to Mr. Boxall of not granting the preliminary injunction was substantial because the chances of recovering the money from Tunisia were "nil" and this harm to the estate outweighed the "inherent harm" to Ms. Kreb stemming from denying her access to the money for a period of time. Finally, the bankruptcy court found that the strong public policy of maximizing the return to creditors made a preliminary injunction an appropriate remedy. Rather than granting the injunction as to the entire amount of the conveyance, however, the bankruptcy court found it appropriate to enjoin transfer of only that portion of the $290,000 needed to benefit the estate, and not any additional amount to benefit Mr. Boxall personally. Accordingly, the bankruptcy court made a rough estimate of the amount of Mr. Boxall's insolvency, finding it to be approximately $100,000, and ordered that $100,000 plus $2,500 for possible payment of NationsBank attorney's fees be retained in the bankruptcy court's registry pending the outcome of the adversary proceeding and that the remainder of the $290,000 be released to Ms. Kreb. Significantly, the bankruptcy court elected to make this rough estimate prior to the claims filing deadline and prior to the first meeting of creditors.[3]

---

1. No trustee was appointed to oversee the estate. Rather, Mr. Boxall remained in possession of the estate in the capacity of debtor-in-possession. It was in this capacity that he filed the adversary action.

2. The bankruptcy court took the motion to intervene under advisement, but allowed Mrs. Boxall to participate in the proceedings in the meantime.

3. The deadline for non-governmental creditors was originally set for November 16, 1995 and was later extended to November 24, 1995. Governmental creditors have until January 8, 1996 to

Mr. Boxall promptly filed a notice of appeal and a motion for leave to appeal, arguing that the bankruptcy court erred in performing its rough claims analysis and therefore erred in enjoining transfer of only a portion of the $290,000. The bankruptcy court stayed its order releasing the money until Mr. Boxall could seek a stay pending appeal from this Court, which order was granted. This Court heard oral argument on plaintiff's motion for leave to appeal on September 1 and, for reasons set forth here, granted that motion. The Court then directed the parties to file briefs on the merits of the appeal. The parties complied, and the matter is now ripe for disposition.

## II

As a threshold matter, it is necessary to determine whether there is jurisdiction over the appeal. Section 158(a) of Title 28 provides that:

The district courts of the United States shall have jurisdiction to hear appeals

(1) from final judgments, orders, and decrees;

. . . .

(3) with leave of the court, from other interlocutory orders and decrees;

. . . of bankruptcy judges. . . .

28 U.S.C. § 158(a). Jurisdiction, therefore depends on whether the bankruptcy court's ruling constitutes a final judgment, order, or decree such that plaintiff has an appeal as of right pursuant to § 158(a)(1).

█ Initially, it would appear that the bankruptcy court's order is not final because it "does not resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights of even one of the parties to the ... bankruptcy case." *Grundy National Bank v. Looney (In re Looney)*, 823 F.2d 788, 790 (4th Cir.1987). Not only is the bankruptcy as a whole still pending, but the connected adversary proceeding that spawned this dispute remains unresolved. Specifically, the bankruptcy court will revisit the issue of the extent to which the transfer to Ms. Kreb was a fraudulent conveyance at the trial of this adversary proceeding, rendering a final judgment at that time.

█ Although the order appealed from is not final,[4] jurisdiction over this appeal is nonetheless appropriate under the collateral order doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Cohen* established what, in effect, is an exception to the final judgment rule. There, the Supreme Court held that an order not otherwise final could nonetheless be appealed as a matter of right if the order "[1] conclusively determined the disputed question, [2] resolved an important issue completely separate from the merits of the action, and [3] was effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (footnote omitted).[5] The bankruptcy court's order in the case at bar meets each of the three requirements.

First, there is no doubt the disputed order conclusively resolved the question of how much of the $290,000 the bankruptcy court would retain in its registry and how much would be returned to Ms. Kreb. The order, in this respect, was not "tentative, informal or incomplete." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225. Nor is there any indication that the bankruptcy court intended to revisit

file a claim. The first meeting of creditors was held on August 23, 1995.

4. It is true that "the concept of finality ... has traditionally been applied 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir.1986) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir.1985)). For example, courts have allowed appeals as of right from bankruptcy court orders that end a particular adversary proceeding, even though the bankruptcy matter as a whole remains unresolved. *See, e.g., Turshen v. Chap-*

*man*, 823 F.2d 836 (4th Cir.1987). No decided case considers whether bankruptcy's relaxed finality doctrine applies on facts analogous to those at bar. Nor is it necessary to reach this question, given the conclusion reached here on the basis of the collateral order doctrine.

5. Although both *Cohen* and *Coopers & Lybrand* construed 28 U.S.C. § 1291 rather than the analogous bankruptcy provision, 28 U.S.C. § 158, the collateral order doctrine has been held to apply in the bankruptcy context. *See In re Looney*, 823 F.2d at 791.

its ruling. Indeed, even though the injunction was styled "preliminary," it is quite clear that the bankruptcy court did not intend to enter a permanent injunction at a later date with respect to the money released to Ms. Kreb, that is the approximately $187,500 that was not ordered held in the registry. Rather, the preliminary injunction was designed to preserve the status quo until the trial on the merits could determine whether the transfer was fraudulent. At trial, the bankruptcy court would not modify or review its preliminary injunction with respect to the money released to Ms. Kreb. Instead, the bankruptcy court at trial would first determine finally whether the conveyance was fraudulent. Next, it would ascertain the precise amount of the conveyance required to benefit the estate. If this amount were less than the amount withheld, then any surplus would be returned to Ms. Kreb. But if the amount needed to benefit the estate were greater than the withheld amount, the bankruptcy court could do nothing further. Which of these eventualities occurs depends on the accuracy of the bankruptcy court's estimate of the extent of Mr. Boxall's insolvency, the very issue underlying this appeal. More specifically, the appeal puts in issue the bankruptcy court's decision to estimate the extent of Mr. Boxall's insolvency at a time prior to expiration of the time for filing claims against the estate, as well as prior to the first meeting of creditors. In a real and practical sense, the bankruptcy court cannot effectively revisit its insolvency estimate because it would have no power to retrieve the $187,500 returned to Ms. Kreb were it later to reconsider its estimate and conclude that more of the $290,000 conveyance is needed to benefit the estate. Thus, as a practical matter, the bankruptcy court, by deciding to make a rough estimate of insolvency prior to the claim filing deadline, has conclusively determined that no more than $102,500 of the $290,000 conveyance is needed to benefit the estate. It is this conclusively determined issue that is the subject of this appeal.

Second, the order not only conclusively resolves an issue, but is also collateral to the merits of the fraudulent conveyance claim. At issue on appeal is whether the bankruptcy court erred in performing a rough estimate of Mr. Boxall's insolvency prior to the deadline for filing claims against the estate. Resolution of this issue on appeal would in no way impinge upon the bankruptcy court's adjudication of the merits of the fraudulent conveyance claim, namely, whether the debtor received less than a reasonably equivalent value in exchange for the transfer, whether the debtor became insolvent as a result of the transfer, and the extent of the debtor's insolvency. In short, the order appealed from is collateral because it does not constitute a "step[ ] toward final judgment in[to] which [the order] will merge" nor was the order to release the money to Ms. Kreb of a "nature as to affect, or to be affected by, decision of the merits of this case." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225.

Third, as a practical matter the decision is effectively unreviewable on appeal from final judgment because the bankruptcy court acknowledged that Ms. Kreb and the $187,500 released to her would be in Tunisia and therefore beyond the reach of the bankruptcy court at the time of final judgment. Thus, as a practical matter unless Mr. Boxall is allowed to appeal this order, he will be effectively foreclosed from seeking appellate review of the bankruptcy court's decision to release the money to Ms. Kreb. *See Palmer v. City of Chicago*, 806 F.2d 1316, 1320–21 (7th Cir.1986) (holding that collateral-order appeal could be taken from order requiring payment of an interim attorney fee award to a plaintiff class; if the amount were paid to class members, there was a strong possibility that it could not be recovered by subsequent appeal).

In sum, the bankruptcy court's order retaining in its registry only $102,500 and remitting to Ms. Kreb the remaining $187,500 fits well within the borders of the collateral order doctrine and there is therefore jurisdiction to entertain the merits of this appeal.

### III

■■ The merits of this appeal present the question whether the bankruptcy court erred in retaining only a portion of the $290,-000 in the bankruptcy court's registry and releasing the remainder to Ms. Kreb. Put

another way, the question is whether the bankruptcy court erred in performing a rough estimate of Mr. Boxall's insolvency prior to the filing deadline for claims against the estate. Because the appeal presents a question of law, review here is *de novo*. *See Rubenstein v. Ball Brothers, Inc. (In re New England Fish Co.)*, 749 F.2d 1277 (9th Cir. 1984).

Not in issue here is the bankruptcy court's conclusion that plaintiff would likely prevail on the merits of his claim that the $290,000 transfer to defendant constituted a fraudulent conveyance. To reach this conclusion, the bankruptcy court correctly focused on whether plaintiff would be able to establish at trial that he "was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(2)(B)(i). And in deciding this question, the bankruptcy court, *inter alia*, examined the evidence available to it concerning the debtor's assets and liabilities.

Also not in issue here is the bankruptcy court's recognition that § 550(a) limits the amount recovered under a fraudulent conveyance claim to the amount that benefits the estate. *See* 11 U.S.C. § 550(a).[6] The law is well settled in this circuit that recovery of a fraudulent conveyance of an amount more than the amount of the debtor's insolvency benefits the debtor in his personal capacity rather than the estate and is therefore

barred by § 550(a). *See Wellman v. Wellman*, 933 F.2d 215 (4th Cir.1991), *cert. denied*, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).[7]

But the bankruptcy court's next step is sharply disputed here. In this next step, the bankruptcy court went on to make a rough estimate of the extent of Mr. Boxall's insolvency about one month after plaintiff filed his petition and well before any reorganization plan had been established. More significantly, the estimate came before the deadline for creditors to file claims and even before the first meeting of creditors. Hence, the estimate was necessarily made with less than complete information concerning the nature and quantum of claims against the estate. At issue here, therefore, is whether such an estimate should properly be the basis of an order, which though denominated "preliminary," finally disposes of $187,500 of the allegedly fraudulent conveyance.

Not surprisingly, a review of the reported cases uncovers no case in which a court applied the § 550(a) limitation prior to the creditors' filing deadline. Indeed, the law is quite sensibly to the contrary: in all of the cases that allow recovery only to the extent of indebtedness, the decision to limit recovery was made *after* confirmation of a reorganization plan.[8] In these circumstances, a bankruptcy court can make a reasonably precise determination of the amount of a fraudu-

---

6. Section 550(a) provides, in pertinent part:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property....

11 U.S.C. § 550(a).

7. Other courts have taken a more liberal view as to what constitutes "benefit" to the estate. *See, e.g., Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 811 (9th Cir.1994) (allowing debtor to recover more than amount actually paid out to creditors because full recovery benefitted estate in securing post-confirmation obligations under the reorganization plan and in reimbursing the costs of litigation); *Tennessee Wheel & Rubber Co. v. Captron Corp. Air Fleet (In re Tennessee Wheel & Rubber Co.)*, 64 B.R. 721 (Bankr. M.D.Tenn.1986) (allowing full recovery where

creditors were to receive future payments because the debtor had financed its plan with a line of credit and full recovery made future payments more likely); *Centennial Industries, Inc. v. NCR Corp. (In re Centennial Indus., Inc.)*, 12 B.R. 99 (Bankr.S.D.N.Y.1981) (same). *But cf. Harstad v. First Am. Bank (In re Harstad)*, 155 B.R. 500, 511–12 (Bankr.D.Minn.1993) (dismissing a post-confirmation preference action because the reorganization plan "provide[d] for a payment to creditors from a pot of money which [would] be unaffected' by any preference recoveries").

8. *See, e.g., Acequia, Inc.*, 34 F.3d at 811; *Wellman*, 933 F.2d 215; *Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323 (10th Cir.1989); *Trans World Airlines, Inc. v. Travellers International AG. (In re Trans World Airlines)*, 163 B.R. 964 (Bankr.D.Del.1994); *Harstad v. First American Bank (In re Harstad)*, 155 B.R. 500 (Bankr.D.Minn.1993); *DuVoisin v. East Tennessee Equity, Ltd. (In re Southern Industrial*

lent conveyance needed to benefit the estate. And a determination of this sort minimizes the risk to the interests of creditors. Not so here. Given the bankruptcy court's finding that any money released to Ms. Kreb would be beyond the jurisdiction of the bankruptcy court at the time of reorganization, the decision to allow Ms. Kreb to receive $187,500 of a transfer that is likely to be found fraudulent prejudices the interests of all the estate's creditors, if, as now seems quite possible, Mr. Boxall's insolvency actually exceeds $100,000.[9] Creditors are entitled to rely on the filing deadline imposed by the bankruptcy court and their rights should not be prejudiced by the bankruptcy court's decision to allow potential assets of the estate to escape to Tunisia prior to that date.

Ms. Kreb argues that the order should be affirmed because in deciding whether the transfer constituted a fraudulent conveyance, the bankruptcy court was required to determine whether the transfer rendered plaintiff insolvent. And to make this determination, Ms. Kreb continues, the bankruptcy court properly estimated plaintiff's assets and liabilities. Ms. Kreb's argument confuses the bankruptcy court's inquiry as to whether a preliminary injunction is warranted with its consideration of the proper scope of the injunction. It is true that in deciding whether Mr. Boxall is entitled to enjoin the transfer of the checks at all, he must show a likelihood of success on the merits of his fraudulent conveyance claim. *See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir.1977). And to show this likelihood of success, he must establish that the transfer rendered him insolvent. In this regard, the bankruptcy court quite properly performed a rough claims analysis to determine whether plaintiff was likely to establish that element of his fraudulent conveyance claim at trial. But once the bankruptcy court determined that Mr. Boxall was likely to succeed on the merits and that an injunction was proper, it was improper to limit the scope of the injunction based on a rough estimate of the claims that might be asserted against the estate. Instead, having established a likelihood of success on the merits, irreparable harm if the injunction was not granted, and little if any harm to defendant if the injunction were granted, Mr. Boxall was entitled to an injunction as to the entire amount of the conveyance to preserve the status quo.[10]

In sum, the bankruptcy court was premature in determining the amount of the recovery that would benefit the estate. Such a determination is proper, indeed mandatory, at the trial on the merits of this fraudulent conveyance claim. At that point, any portion of the $290,000 that exceeds the extent of plaintiff's insolvency should be released to Ms. Kreb. But prior to that final determination, the bankruptcy court should retain in its registry the entire $290,000.

The bankruptcy court's grant of a preliminary injunction will therefore be modified to enjoin the transfer of any portion of the $290,000 and the entire sum will be retained in the registry of the bankruptcy court pending disposition of the adversary proceeding. An appropriate order will issue.

---

*Banking Corp.),* 59 B.R. 638 (Bankr.E.D.Tenn. 1986).

9. In fact, at least one creditor has filed a claim that was not contained in the debtor's schedules and therefore was not considered by the bankruptcy court in estimating the extent of his insolvency.

10. Ms. Kreb also invokes 11 U.S.C. § 502(c)(1) in support of her position. That provision states that:

There shall be estimated for purposes of allowance under this section any contingent or unliquidated claim, the fixing or liquidation of

which, as the case may be, would unduly delay the administration of the case....

11 U.S.C. § 502(c)(1). Yet, this statute provides no support to Ms. Kreb for it does no more than empower the bankruptcy court to estimate claims of uncertain sums when not resolving the claims would unduly delay closing of the estate. *See, e.g., In re Nova Real Estate Investment Trust,* 23 B.R. 62, 65 (Bankr.E.D.Va.1982). In the instant case, however, the claims against the estate, although disputed, were for sums certain. Moreover, the bankruptcy court's estimation of the claims was not made in order to avoid delay in settling the estate. Section 502(c)(1), therefore, is inapposite to the case at bar.