In re Kenneth A. NATHAN, Trustee of Timco, LLC, Plaintiff,

v.

BROWNSTONE PLASTICS, LLC, Defendant.

Civil Action No. 13–10034.

United States District Court, E.D. Michigan, Southern Division.

Signed March 18, 2014.

864

Kenneth A. Nathan, Nathan Zousmer, Southfield, MI, for Plaintiff.

Matthew E. Wilkins, Paula A. Hall, Brooks Wilkins Sharkey & Turco, PLLC, Birmingham, MI, for Plaintiff.

Sheldon S. Toll, Sheldon S. Toll Assoc., Southfield, MI, for Defendant.

### ORDER DENYING THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 19)

MARK A. RANDON, United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

A month before filing its voluntary Chapter 7 bankruptcy petition, Timco,

LLC sold its business and existing assets to Brownstone Plastics, LLC through an Asset Purchase Agreement ("APA"); in exchange, Brownstone paid Timco ten dollars and agreed to assume Timco's operating liabilities. Brownstone reneged on the deal: it sold Timco's business and assets to another company and otherwise washed its hands of its obligations under the APA. In this adversary proceeding, Kenneth A. Nathan—the Chapter 7 Trustee for Timco's bankruptcy—seeks damages for breach of the APA and, in the alternative, to avoid the allegedly fraudulent transfer of Timco's assets.

After the District Court withdrew the automatic reference to the Bankruptcy Court, the parties consented to this Magistrate Judge's jurisdiction (Dkt. Nos. 4, 5, 16). The Trustee's motion for summary judgment (Dkt. No. 19) is pending. It has been fully briefed (Dkt. Nos. 20, 22); the Court heard oral argument on March 4, 2014.

Because questions of fact exist as to whether: (1) it was contractually impossible for Brownstone to pay Timco's liabilities at the time the parties signed the APA; and, (2) the Trustee can recover the assets (or the value of the assets) that were fraudulently transferred, the Trustee's motion is **DENIED.**

## II. BACKGROUND

Timco was a financially troubled thermoforming plastics company that produced parts for automotive companies. Sometime before January 21, 2011, one of Timco's major customers gave it an ultimatum: sell the business, or lose it as a customer. Timco did not believe it could immediately find a buyer. So, in an effort to preserve the business as a going concern, Revstone Plastics, LLC, a major creditor of Timco, created a new company called Brownstone. The next day—and just one month before Timco filed bankruptcy—Timco and Brownstone signed the APA, by which Timco transferred its assets—valued at $2,123,929.33—to Brownstone. In return, Brownstone—a shell corporation with no track record, existing assets, or employees—paid Timco ten dollars and assumed its liabilities of $8,317,104.52. Specifically, the APA stated: "[Timco] wishes to sell to [Brownstone], and [Brownstone] wishes to purchase from [Timco], the Business, and in connection therewith [Brownstone] is willing to assume certain liabilities and obligations of [Timco] relating thereto, all upon the terms and subject to the conditions set forth herein" (Dkt. No. 19 at p. 8).[1]

Brownstone did not pay any of Timco's liabilities—It says, from the outset, Timco never expected it to do so. Instead, Brownstone claims it was expected to merely babysit the company until a real buyer could be found. Less than three months later, Brownstone sold Timco's assets to a third party—AMP Plastics, LLC.[2]

## III. STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *CareToLive v. Food & Drug Admin.,* 631 F.3d 336, 340 (6th Cir.2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagree-

---

1. All page numbers refer to CM/ECF pagination.

2. Brownstone's attorney represented at oral argument that AMP is now out of business and the transferred assets were sold at auction.

ment to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Servs.*, 640 F.3d 716, 723 (6th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must draw all justifiable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir.2011). However, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Rule 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir.2011).

## IV. ANALYSIS

### A. Count I—Breach of Contract

#### 1. The Trustee has Standing to Pursue the Claim

■ Citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) and *DSQ Prop. Co. Ltd. v. DeLorean*, 891 F.2d 128, 131 (6th Cir.1989), Brownstone argues that the Trustee lacks standing to bring the breach of contract claim, because a trustee cannot pursue creditors' claims against a third party. The Court disagrees.

■ The *Caplin* rule provides that a bankruptcy trustee lacks standing to sue on behalf of a bankrupt company's estate when any recovery would go the compa-

ny's creditors, instead of the estate. *DeLorean*, 891 F.2d at 131. In other words, a trustee cannot pursue claims that properly belong to a creditor. Here, Timco and Brownstone were the only parties to the APA.[3] When Timco filed for bankruptcy, its estate became the owner of all of its property, including any damages recovered for breach of contract. This means that Mr. Nathan—as Trustee—has the exclusive right to assert a breach of contract claim against Brownstone. *See* 11 U.S.C. § 541(a)(1) (defining the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case"); *Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir.2012) ("When Auday filed for bankruptcy, [the] estate became the owner of all of her property, including tort claims that accrued before she filed her bankruptcy petition"); *In re Fisher*, 296 Fed.Appx. 494, 503–04 (6th Cir.2008) (Trustee had standing to challenge transfer where she did not seek to avoid a transfer to a secured party but rather to avoid the sale of the debtor's inventory to a third party).

#### 2. Original Impossibility

■ Brownstone next argues that the APA should not be enforced due to the impossibility of its performance when the APA was signed. There are two types of impossibility in Michigan—original impossibility and supervening impossibility:

> The former is impossibility of performance existing when the contract was entered into, so that the contract was to do something which from the outset was impossible; whereas [s]upervening im-

---

**3.** Section 10.8 of the APA provides:

Nothing in this Agreement, express or implied, is intended to or shall confer upon any Person other than the parties and their respective successors and permitted assigns any legal or equitable right, benefit or remedy of any nature under or by reason of this Agreement.

(Dkt. No. 19 at p. 35 (CM/ECF)).

possibility is that which develops some time after the inception of the contract.

\* \* \*

██ the essence of the modern defense of impossibility is that the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible[.] The true distinction is not between difficulty and impossibility.... The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract[.]

*Bissell v. L. W.Edison Co.,* 9 Mich.App. 276, 156 N.W.2d 623, 626–27 (Mich.Ct.App. Dec. 8, 1967) (citation omitted). "Where the impossibility of performance is known to both parties at the time of making the agreement, the promise is not binding." *Rogers Plaza, Inc. v. SS Kresge Co.,* 32 Mich.App. 724, 189 N.W.2d 346, 356 (Mich. Ct.App. April 23, 1971) (citing 12 ALR2d § 5 (1962)).

██ There is conflicting evidence on the question of original impossibility. On the one hand, Tim Hoefer, Timco's former President, provided a signed affidavit which supports impossibility:

5. Brownstone [was formed] to baby-sit the Company, and to preserve Timco's assets and the jobs of its workforce until a buyer could be found.

6. Brownstone was a newly created company, with no assets, no cash, and no employees. It was impossible for it to pay the debts of Timco's

creditors, which are stated in the Motion to be $8 million. However, Brownstone was successful in baby-sitting the Company until a successful sale could take place.

7. Brownstone was the baby-sitter of Timco from January 21, 2011 to April 15, 2011 (a period of less than 90 days) when AMP Plastics, LLC purchased the Company.

(Dkt. No. 20; Ex. 1 p. 2). However, when Mr. Hoefer became President of Brownstone, he wrote a letter to Timco's customers and suppliers indicating that there would be no change in the operation of the business once Brownstone took control of Timco:

To support the continued growth of the company, Timco, LLC was acquired by Brownstone Plastics, LLC on January 21, 2011. Brownstone is a wholly-owned subsidiary of Revstone Plastics, LLC, which is itself wholly-owned by Revstone Industries, LLC. Brownstone continues to operate the business as before, and there is no change in terms or continuity of supply to our valued customers and suppliers. The personnel, our dedication to quality and our competitive pricing all remain unchanged. For you, the only visible change will be from the name "Timco" to the name "Brownstone."

Subsequently, on February 22, 2011, the *former* Timco determined to file under Chapter 7 of the bankruptcy code. As this is the former corporate entity, there is no effect on your relationship with the new Brownstone. Brownstone continues to supply its customers and continues to honor past, current, and future payments due to its vendors.

(Dkt. No. 19; Ex. E).[4] This suggests that Brownstone may have believed it could

---

4. Mr. Hoefer indicated that he was not sure if 　　the letter was actually sent and explains that

continue to manage Timco's liabilities, as agreed, on an ongoing basis.

Based on the conflicting evidence, impossibility is a question of fact for the trier of fact to resolve. *Roberts v. Farmers Ins. Exch.*, 275 Mich.App. 58, 74, 737 N.W.2d 332, 343 (Mich.Ct.App. March 27, 2007).[5]

### B. Count II—Fraudulent Transfer

#### 1. The Trustee Can Avoid the Transfer

■ 11 U.S.C. § 548(a)(1)(B) allows the Trustee to avoid—as a constructively fraudulent transfer—the $2,123,929.33 in assets that Timco transferred to Brownstone, if four conditions are met:

1. Timco transferred its assets to Brownstone;

2. The transfer occurred within two years before Timco filed bankruptcy;

3. Timco received less than a reasonably equivalent value in exchange for the transfer; and,

4. Timco was insolvent when the transfer was made.

##### a. Transfer of Assets Within Two Years of Bankruptcy

Timco transferred its assets to Brownstone on January 21, 2011; it filed for bankruptcy one month later—on February 22, 2011 (Dkt. No. 19 at p. 3). As such, the first two elements are satisfied.

##### b. Reasonably Equivalent Value

Regarding the third element, the Court must determine whether: (1) Timco re-ceived "value"; and, (2) that value was reasonably equivalent to the value of the transferred assets. 11 U.S.C. § 548(a)(1)(B); *In re Morris*, 2013 WL 5705630, at *10 (Bkrtcy.N.D.Ohio Oct. 18, 2013). The bankruptcy code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, *but does not include an unperformed promise to furnish support to the debtor[.]*" 11 U.S.C. § 548(d)(2) (emphasis added).

The Court looks to the date on which the APA was signed to determine whether Timco received reasonably equivalent value in exchange for its assets. *In re Chomakos*, 69 F.3d 769, 770–71 (6th Cir. 1995) ("The critical time is when the transfer is 'made'") (quoting *Collier on Bankruptcy* § 548.09 at p. 116 (15th ed. 1984)). When the APA was signed, Brownstone paid Timco ten dollars and *promised* to pay its liabilities. However, not only were Timco's debts not paid contemporaneously with the execution of the APA (an unperformed promise), but Brownstone *never* fulfilled its promise to pay Timco's liabilities. *Cf. In re Congrove*, No. 04–8049, 2005 WL 2089856, at *6 (6th Cir. BAP 2005) (finding reasonably equivalent value when the defendant paid the debtor's liabilities contemporaneously with the execution of the Franchise Termination Agreement). Therefore, Timco only actually received ten dollars in exchange for over $2 million in assets. This is not a reasonably equivalent value.

---

"[i]f Brownstone had not attempted to assure the vendors that they would be paid, the business would have collapsed, the employees would have lost their jobs, and the sale to AMP Plastics would not have taken place" (Dkt. No. 20; Ex. 1 at pp. 2–3 (CM/ECF)). However, whether the letter was a facade is a question for the trier of fact.

5. Because the Court denies the Trustee's motion for summary judgment on his breach of contract claim based on impossibility, it need not consider Brownstone's remaining defenses of intent or mere conduit. Likewise, because there is a question of fact regarding Brownstone's liability for breach of contract, the Court need not consider the amount of any damages.

Brownstone argues that it provided additional value to Timco by preserving it as a going concern and protecting the employees' jobs until AMP took over the company (Dkt. No. 19; Ex. D at p. 5). But, these considerations were not included in the APA. Even if they were, preserving Timco's going concern value is a red herring: there was no benefit to Timco—which had relinquished all of its assets—without the unfulfilled promise to pay its outstanding liabilities. Similarly, only the employees—not Timco—benefitted from the preservation of jobs. As such, Timco did not receive a reasonably equivalent value; this element is satisfied.

### c. Insolvency

The parties do not dispute the fourth element. As such, this element is satisfied.

### 2. Recovery

 There is no question that Timco fraudulently transferred its assets to Brownstone under 11 U.S.C. § 548(a)(1)(B), and the transfer can be avoided; the Court so finds as a matter of law. But, whether the Trustee can *recover* the transferred assets or their value under 11 U.S.C. § 550 is a separate matter. *In re Burns*, 322 F.3d 421, 427 (6th Cir.2003) ("[a]voidance and recovery are distinct concepts and processes"). Section 550 instructs that "the trustee may recover, *for the benefit of the estate*, the property transferred, or, if the court so orders, the value of such property[.]" 11 U.S.C. § 550(a) (emphasis added). And, where the property transferred has a security interest over and above the value of the property, the weight of authority dictates that a trustee may not recover because the estate would not benefit. *See e.g., Barber v. McCord Auto Supply, Inc. (In re Pear-*

*son Indus., Inc.)*, 178 B.R. 753 (Bankr. C.D.Ill.1995); *In re Fisher*, 296 Fed.Appx. at 505. Whether the recovery of an avoidance will benefit the estate is determined on a case-by-case basis. *E.g., Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir.1991), *cert. denied* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

Brownstone presents an affidavit signed by Homer W. McClarty, a member of the panel of Bankruptcy trustees in the United States Bankruptcy Court for the Eastern District of Michigan, to support its argument that the recovery would not benefit the estate because the assets are fully encumbered:[6]

4. [T]he Company is the owner of the former Monroe Bank & Trust bank ["MBT"] debt against Timco, LLC in the total amount of $4,507,481.10.

5. I do not believe that it is disputed that the Bank had a lien on all assets of Timco.

6. I also do not believe that it is disputed that the secured debt of the Bank was substantially in excess of the value of Timco's assets at the time of the alleged transfer.

7. I am informed and believe that the Bank and/or the Company consented to the transfer of assets between Timco and Brownstone Plastics, LLC, subject to the Bank's lien.

(Dkt. No. 20; Ex. 2 at p. 2). While MBT's (or the Company's) security interest undoubtedly attached to Timco's assets, there is no evidence that it was maintained after Brownstone received the assets or when they were sold at auction. *In re Fisher*, 296 Fed.Appx. at 505 (6th Cir.2008) (distinguishing *Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*). This is

---

**6.** Brownstone's argument is articulated as a standing issue, but it is really a recovery issue.

especially true considering the attorney for the Trustee disagreed during oral argument that the secured debt exceeded the value of the assets, and represented that any money recovered would most likely be for the benefit of all creditors.[7] As such, whether the Trustee can recover the assets (or value thereof) under 11 U.S.C. § 550 is a question of fact.

## V. CONCLUSION

Because questions of fact exist as to whether: (1) it was contractually impossible for Brownstone to pay Timco's liabilities at the time the parties signed the APA; and, (2) the Trustee can recover the assets (or the value of the assets) that were fraudulently transferred, the Trustee's motion is **DENIED.**

**IT IS ORDERED.**

7. There may also be other potential benefits to the estate (*see e.g., In re Sweetwater,* 884 F.2d 1323, 1327 (10th Cir.1989) (recovering avoidance claims to pay administrative claims will benefit estate)).